Gregory B. Smith (USB 6657)
GREG SMITH & ASSOCIATES
7324 South Union Park Avenue
Midvale, UT  84047
(801) 641-3397
gs@justiceinutahnow.com

*Attorney for Plaintiff, SLB through her parents, Matt and Krista Bray*

## IN THE UNITED STATES DISTRICT COURT
## STATE OF UTAH

| | |
|---|---|
| SLB (DOB MARCH 8, 2006), BY HER PARENTS, MATT AND KRISTA BRAY<br><br>Plaintiff,<br><br>*vs.*<br><br>ALPINE SCHOOL DISTRICT, CEDAR VALLEY HIGH SCHOOL, and JOHN DOES I-X.<br><br>Defendants. | **COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH DISABILITES ACT AND RETALIATION SEEKING LEGAL AND EQUITABLE RELIEF**<br><br>CASE:<br><br>JUDGE: |

Plaintiff, through Legal Counsel, complains against Defendants, demanding a trial by jury, and seeking relief as follows:

### I.    PARTIES

1. Plaintiff is a Utah citizen who resides in Utah County, State of Utah.  According to the State of Utah, Alpine School District (ASD) is a domestic, non-profit corporation, whose address is 575 N 100 E American Fork, UT 84003. The Registered Agent is Tyler John or Lawrence Vigue, whose address is 575 N 100 E of

American Fork, UT 84003. Cedar Valley High School is part of the Alpine School District.

## II. JURISDICTION AND VENUE

2. The Court has jurisdiction under the United States Americans with Disabilities Act to hear this matter. Congress enacted the Americans with Disabilities Act (ADA) to prohibit discrimination against those with disabilities. The statute, first enacted in 1990, applies in the areas of employment, public accommodations, transportation, services offered by governmental entities, and other areas. Defendants are public, educational entities. The act attempts to extend the types of rights provided under the Civil Rights Act of 1964 to those with disabilities. Included among the right in the ADA are provisions requiring educational institutions to provide accommodations to those with disabilities.[1]

3. Venue is proper in this Court (pursuant to 28 U.S.C. § 1391) because the activities took place in the State of Utah (within the territorial limits of the Court).

## III. STATEMENT OF FACTS/CLAIM

1. SLB is a 15-year-old girl, who has the condition Postural Orthostatic Tachycardia Syndrome (POTS).

    a. POTS is an autonomic nervous system dysfunction, which makes it hard for SLB to stay alert.

    b. POTS gives her headaches, dizziness, fatigue and nausea.

---

[1] This lawsuit brought under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131-12134, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and other laws that may apply, Utah or United States.

  c. It also causes her to pass out, and makes it hard for her to stay upright.

2. Experts of Utah's Primary Children's Hospital diagnosed this on or about September of 2020.

3. POTS affects many major life functions for SLB such as eating, sleeping, concentrating, staying alert, staying awake, walking, learning, standing, and generally taking care of herself.

4. She attends Cedar Valley High School within Alpine School District in Utah County, Utah.

5. Because SLB suffers from POTS, she has a service dog named Paris, who is a red Labrador Retriever.

  a. Paris is very well behaved.

  b. Paris has not bitten anybody.

  c. Paris has neither barked nor has she been a distraction in the classroom.

  d. Maligator Kennels trained Paris.

  e. Paris mostly provides mobility support, and when SLB passes out, Paris stays by SLB to protect her.

  f. Paris is tantamount to a family member.

  g. Paris sleeps with SLB nightly and has for approximately eighteen (18) months.

7. SLB's rights of having her service dog with her have been violated.

  a. The Alpine School District (ASD) requires Paris be approved to be on ASD property prior to the Paris' entering school property.

  b. ASD requires this approval every year.

    c. The Principal of Cedar Valley High School (CVHS) sent the Bray family a link, which deals with how to get a service dog approved. The verbiage that the link takes one to is laid out below:

## Alpine School District Service Animal Requests

All requests for an individual with a disability to be accompanied by a service animal **must**[2] be addressed in writing at least 20 school days prior to bringing the service animal to a school site, school function, or workplace. **Until written approval is received, the service animal will not be permitted**. All requests must be submitted annually and must include the following information:

1. Parent/Legal Guardian name, email address, and telephone number.
2. Student name, ID number, school site, and school year.
3. Confirmation that the service animal is required because of a disability.
4. A description of the work or task(s) the been trained to perform.
5. Acknowledgement that the owner or handler of the service animal shall be solely responsible for the supervision and care of the service animal, including feeding, exercising, bathroom breaks, and clean-up.
6. Acknowledgement that the owner or handler of the service animal shall be solely responsible for restraint of the service animal at all times.

---

[2] Bold added

7. Initial and subsequent annual documentation certifying that all vaccinations have been administered and are up to date and that the service animal is in compliance with public health and local animal control laws.

8. Confirmation that the service animal is:

    (a) Housebroken.

    (b) Will be kept clean and groomed to avoid shedding, dander, and offensive odor.

    (c) Treated for, and kept free of, fleas and ticks.

    (d) Spayed or neutered.

9. Acknowledgement that the service animal may be removed from school property, events, or functions if:

    (a) The service animal interferes with the educational program of any student.

    (b) The service animal urinates or defecates in inappropriate locations.

    (c) The service animal is unnecessarily vocal (barking, growling, or whining).

    (d) The service animal demonstrates aggression towards people or other animals.

    (e) The service animal solicits or steals food or other items from students or school personnel.

    (f) The service animal causes destruction of property.

10. Acknowledgement that the handler is strongly encouraged to have the service animal sufficiently identified to put others on notice that the animal is a service animal.

11. Acknowledgement that the owner or the handler of the service animal is liable for any and all damages to property or injuries to persons caused by the service animal and that he/she will indemnify, defend and hold harmless the school and the District from and against any and all claims, actions, suits, judgments, and demands brought by any

party arising on account of such damage or injury. The Brays were very confused by this because this was not their understanding of the law.[3]

8. The Bray family understood the law as laid out in footnote 1 *infra*.[1]

9. SLB's mother, Krista Bray, on or about the winter (February) of 2021, reached out to ASD to let ASD know that she felt ASD was not in compliance with the ADA, and that the policy (stated *supra*) just went too far.

10. Mrs. Bray spoke to the director of student services, Sue Hayes.

   a. Mrs. Bray was essentially told that she should fill out "the form," and once the documentation was received, Mrs. Bray would receive a document approving SLB's "right" to have Paris with SLB on ASD premises.

   b. She the Bray family filled out the document, and within a couple of days, SLB was approved to have Paris with her on ASD property.

11. The 2021-2022 year, Mrs. Bray reached out in June (28th) of 2021, and let Mrs. Hayes know that she needed Paris to be allowed on ASD premises again.

   a. Mrs. Hayes let Mrs. Bray know that the ASD was revising its forms, and that ASD would get back with Mrs. Bray.

   b. By July 18, Mrs. Bray had not heard back.

   c. On July 29, Mrs. Bray reached out a again.

---

[3] The Bray family's understanding of the law was consistent with what federal courts have said: "With a few exceptions, Title II of the Americans with Disabilities Act requires **public entities** to permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go. 28 C.F.R. § 35.136(g). Service animals are defined as dogs that are individually trained to do work or perform tasks for people with disabilities. 28 C.F.R. § 35.104. "Emotional support animals" are not considered service animals which fall under Title II's mandate. 28 C.F.R. § 35.104 [The Bray family has never asserted that Paris is merely an *emotional-support* animal]. In situations where **it is not obvious** if a dog is a service animal, employees of a public entity are permitted to ask if **the dog is a service animal required because of a disability**, and **what work or task the dog has been trained to perform.** 28 C.F.R. § 35.136(f). They are not permitted to request documentation for the dog, require the dog to demonstrate a task, or inquire about the nature of the person's disability. 28 C.F.R. § 35.136(f). *Sykes v. Cook Cty. Circuit Court Prob. Div.*, 837 F.3d 736, 738 (7th Cir. 2016). Bold added.

d. Mrs. Bray expressed her view that Paris should be allowed on ASD property with or without an approval letter by ASD.

e. Mrs. Bray made it known that school was only about three (3) weeks away from beginning, and that the issue with Paris needed to be resolved.

f. Mrs. Bray did not get a response to that communication.

g. The stress level of the Bray family and SLB became very serious.

h. After more calls, and less than two weeks before school started, Mrs. Bray was finally able to reach Mrs. Hayes.

i. Mrs. Bray made it known that because things were at the ninth hour, the Bray family could not meet the 20-day mandate of ASD's-service-animal-approval policy.

j. Mrs. Hayes told Mrs. Bray that ASD was still working on (and updating) the policy that would affect SLB and Paris.

k. Mrs. Hayes told Mrs. Bray to simply submit what had been submitted the prior year, and that Mrs. Hayes would work on the approval letter.

l. To date, the Bray family has not received any updated policy regarding approval for service animals on ASD property.

m. This process has been quite the headache for the Bray family.

n. The Bray family lawfully opposed the form requirement practice, which was made unlawful by the ADA, and they have participated meaningfully in investigations, proceedings, and meetings under the ADA (see *infra* generally).

o. Because of the violations of the ADA, Defendants have caused SLB and her family to incur needless stress and anxiety, attorney fees and costs.

## CAUSES OF ACTION

12. Plaintiff realleges all the above facts, and incorporates all of them in her causes of action.

13. Plaintiff asserts any cause of action that the facts would support.

14. Plaintiff asserts that her rights have been violated by having to fill out a form in order for her service dog, Paris, to be on the premises of the ASD property. For example, it is unlawful for Defendants to force Plaintiff, or her parents, to sign an acknowledgement "that the owner or the handler of [Paris] is liable for any and all damages to property or injuries to persons caused by the service animal and that he/she will indemnify, defend and hold harmless the school and the District from and against any and all claims, actions, suits, judgments, and demands brought by any party arising on account of such damage or injury.

15. Plaintiff asserts that she has been wrongly retaliated against for raising the issues of discrimination and her disability.[4]

---

[4] **42 U.S.C. § 12203 has a clear prohibition against retaliation and coercion**
(a) Retaliation - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
(b) Interference, coercion, or intimidation - It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.
(c) Remedies and procedures - The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b) of this section, with respect to subchapter I, subchapter II and subchapter III of this chapter, respectively.
(4) Retaliating against any person because that person has participated in any investigation or action to enforce the Act or this part.
**29 C.F.R. § 1630.12 - Retaliation or coercion**
a) Retaliation - It is unlawful to discriminate against any individual because that individual has opposed any act or practice made unlawful by this part or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing to enforce any provision contained in this part.
(b) Coercion, interference or intimidation - It is unlawful to coerce, intimidate, threaten, harass or interfere with any individual in the exercise or enjoyment of, or because that individual aided or encouraged any other individual in the exercise of, any right granted or protected by this part.

**PRAYER FOR RELIEF**

Plaintiff, SLB, prays that the Court order Defendants to obey the ADA, and to withdraw their additions to it (such as making SLB agree to terms regarding Paris, which Congress has not mandated) that SLB be reasonably accommodated under the ADA and related federal laws, and that she not be compelled to file special forms, so that her service animal be allowed on ASD property.  Rather, that ASD only be allowed to ask questions that the ADA allows. She also asks the Court to order the Defendants pay her legal fees that have result from the filing and prosecution of this lawsuit. Further, she prays that the Court order that retaliation again Plaintiff cease.  She further asks for any damages, or equitable relief, that the Court can give her, including, but not limited to, having Defendants pay all her attorney fees and costs related to her bring this action, and for pre- and post-judgment interest.

DATED this Monday, January 10, 2022

/s/ Gregory B. Smith, attorney for SLB